Estado Libre Asociado de Puerto Rico
TRIBUNAL DE APELACIONES
PANEL VIII

| ROSA AMPARO GARCÍA ALERS<br><br>APELANTE<br><br>V.<br><br>CHUBB INSURANCE COMPANY, ET AL<br><br>APELADO<br><br>CTM GROUP, INC.; ET AL<br>TERCERO DEMANDADO | TA2026AP00349 | *Apelación* procedente del Tribunal de Primera Instancia, Sala Superior de Bayamón<br><br>Caso Núm. BY2022C04812<br><br>Sobre: Daños y Perjuicios |
| --- | --- | --- |

Panel integrado por su presidenta, la Juez Lebrón Nieves, el Juez, Pagán Ocasio y la Jueza Álvarez Esnard.

Pagán Ocasio, juez ponente

# SENTENCIA

En San Juan, Puerto Rico, a 26 de mayo de 2026.

## I.

El 6 de abril de 2026, la señora Rosa Amparo García Alers (señora García Alers o apelante) presentó digitalmente un recurso de *Apelación* en el que nos solicitó que revocáramos la *Sentencia* emitida por el Tribunal de Primera Instancia, Sala Superior de Bayamón (TPI o foro primario), el 10 de febrero de 2026, notificada y archivada digitalmente en autos el 11 de febrero de 2026. [1] Mediante esta, declaró Ha Lugar la *Moción de Sentencia Sumaria* presentada por Chubb Insurance Company of Puerto Rico (Chubb) y la *Moción de Sentencia Sumaria bajo la Modalidad de Insuficiencia de Prueba* presentada por CTM Group, Inc. (CTM). En consecuencia, desestimó, con perjuicio, la *Demanda*, por falta de negligencia de los demandados e insuficiencia de la prueba.

---

[1] Véase entrada núm. 108 del expediente digital del caso en el Sistema Unificado de Manejo y Administración de Casos del Tribunal de Primera Instancia (SUMAC-TPI).

El 13 de abril de 2026, emitimos una *Resolución* en la que le concedimos a la parte apelada Chubb y CTM hasta el 6 de mayo de 2026 para presentar sus respectivos alegatos en oposición.[2]

En cumplimiento de orden, el 6 de mayo de 2026, Chubb presentó un *Alegato de la parte apelada.*[3]

En la misma fecha, CTM presentó un *Alegato de la parte apelada.*[4]

Con el beneficio de la comparecencia de las partes, damos por perfeccionado el recurso. En adelante, pormenorizamos los hechos procesales pertinentes a la atención del recurso.

**II.**

El caso de marras tuvo su génesis el 16 de septiembre de 2022, cuando la señora García Alers presentó una *Demanda* sobre daños y perjuicios, por una caída, en contra de Chubb, como aseguradora de DDR del Sol, LLC —dueña del centro comercial Plaza del Sol—.[5] Alegó que, el 13 de mayo de 2022, mientras se encontraba de compras en Plaza del Sol Shopping Mall, su bisnieta le pidió utilizar una máquina de niños que se encontraba en medio del pasillo. Adujo que, cuando se disponía a pagar por el uso de la máquina, impactó con su pie el borde de una plataforma de madera que sobresalía del piso, por aproximadamente una pulgada y media, de donde se encontraba la máquina. Manifestó que, por el golpe, perdió el control y cayó sobre la tarima de lado izquierdo, sufriendo una fractura, traumas a su cuerpo, sufrimientos y angustias mentales.

Sobre los hechos narrados, argumentó que el descuido y negligencia del centro comercial, al tener un área de juegos para niños sobre una plataforma de madera que sobresalía del piso, sin

---

[2] Véase entrada núm. 2 del expediente digital del caso en el Sistema Unificado de Manejo y Administración de Casos del Tribunal de Apelaciones (SUMAC-TA).
[3] Íd., entrada núm. 3.
[4] Íd., entrada núm. 4.
[5] Véase, entrada núm. 1 en el SUMAC-TPI.

advertir la condición de peligro y sin protección para caídas, es la causa próxima del accidente. La apelante reclamó una suma de $200,000.00 por concepto de daños físicos, sufrimientos y angustias mentales y el recobro de los gastos médicos incurridos en el tratamiento.

El 21 de noviembre de 2022, Chubb presentó una *Contestación a Demanda.*[6] Alegó afirmativamente que la referida plataforma está bajo el control de CTM. Además, alegó que, sobre la plataforma, hay máquinas de juegos pintadas con colores brillantes y llamativos, ésta es grande y está pintada de marrón, haciendo contraste con el piso. Alegó también que, la causa próxima del daño fue la propia inobservancia y total falta de precaución de la apelante. Por su parte, adujo que la apelante no tomó las precauciones que una persona prudente y razonable debe tomar al caminar. En fin, sostuvo que cumplió con sus obligaciones y que no incurrió en responsabilidad alguna por los alegados daños reclamados.

Ese mismo día, Chubb presentó una *Demanda contra terceros* en contra de CTM.[7] Aludió a que, mediante contrato de arrendamiento con DDR Del Sol, LLC, CTM asumió la obligación de proteger, defender y mantener indemne la responsabilidad frente a cualquier reclamación relacionada con la plataforma o máquinas de juegos para niños en el centro comercial. Por lo cual, alegó que quienes serían responsables, en la relación externa, de las imputaciones originales de la demanda serian CTM y sus respectivas aseguradoras. De igual manera, adujo que, en la relación interna, responderían frente a Chubb.

El 20 de febrero de 2025, CTM presentó una *Contestación a Demanda contra Tercero.*[8] Alegó afirmativamente que la

---

[6] Íd., entrada núm. 8.
[7] Íd., entrada núm. 9.
[8] Íd., entrada núm. 59.

responsabilidad de CTM, si alguna, está limitada a los términos y condiciones del contrato suscrito entre las partes. Negó que haya incurrido en responsabilidad, sino alegó que los daños se deben única y exclusivamente a la propia negligencia de la apelante.

Tras varios trámites procesales, el 16 de julio de 2025, Chubb presentó una *Solicitud de Sentencia Sumaria*.[9] En resumen, alegó que el testimonio de la apelante es insuficiente para establecer, de manera preponderante, que Chubb tuvo conocimiento de la presunta condición de peligrosidad o que tal conocimiento podría imputársele. Señaló que las máquinas estaban pintadas con colores brillantes y llamativos; y que la plataforma se trata de un objeto grande, claramente visible y perceptible a simple vista. Por lo que, sostuvo que, la instalación de la plataforma en el centro comercial no creó una condición peligrosa. Adujo que Chubb no actuó ni omitió actuar de manera que le causara daño a la apelante.

Ahora bien, manifestó que, de determinarse que la plataforma era una condición peligrosa, sería CTM quien podría responder frente a la apelante. Arguyó que la aludida plataforma estaba bajo el control y deber de mantenimiento de CTM, en virtud del contrato de arrendamiento con el centro comercial por lo que las alegaciones de negligencia no son oponibles a Chubb. Por lo anterior, suplicó al TPI que dictara sentencia a su favor decretando el archivo y desestimación de la demanda, con perjuicio.

El 21 de julio de 2025, CTM presentó una *Moción de Sentencia Sumaria bajo la Modalidad de Insuficiencia de Prueba*.[10] Alegó que, según narrado por la propia apelante, la caída no fue causada por una condición oculta, sino que se debió a su propio descuido al intentar subir una plataforma que vio antes de tropezar. Adujo que, por las propias admisiones de la apelante y la ausencia de prueba

---

[9] Íd., entrada núm. 88.
[10] Íd., entrada núm. 90.

admisible que permita inferir la existencia de negligencia, procede la desestimación, con perjuicio, de la demanda incoada en su contra. Arguyó que, la apelante carece de evidencia pericial que permita establecer, mediante preponderancia de la prueba, que la plataforma constituía una condición peligrosa.

El 3 de agosto de 2025, la apelante presentó una *Moción consolidada en Oposición a las Solicitudes de Sentencia Sumaria.*[11] Arguyó que existían elementos sustanciales en controversias que impedían la adjudicación sumaria del caso, por lo que suplicó la celebración de un juicio. Adujo que no se estableció claramente entre las partes apeladas quién tenía el deber primario de garantizar la seguridad del área en controversia y si ese deber fue cumplido o no. Por lo que, adujo que existía una controversia real sobre trasferencias de responsabilidad entre Chubb y CTM. Por su parte, alegó que cuenta con prueba concreta, robusta y convincente que sustenta su reclamación y demuestra la existencia de controversias materiales. En particular, mencionó que cuenta con evidencia documental como el documento intitulado "Public Playground Safety Handbook", aplicable a áreas de juego para niños, así como fotográficas del lugar y de la plataforma que ilustran la configuración del área y la ausencia de advertencias visibles.

El 3 de septiembre de 2025, Chubb presentó una *Réplica a "Moción consolidada en Oposición a las Solicitudes de Sentencia Sumaria.*[12] De entrada, mencionó que la apelante no controvirtió los hechos propuestos por Chubb como incontrovertidos. Por lo cual, adujo que la apelante incumplió con los requisitos procesales de la Regla 36.3 (b) de Procedimiento Civil, 32 LPRA Ap. V, R. 36.3(b), y que no derrotó el planteamiento de insuficiencia de prueba para establecer la negligencia que le imputa a Chubb. En particular,

---

[11] Íd., entrada núm. 93.
[12] Íd., entrada núm. 99.

arguyó que la apelante no tiene prueba sobre las dimensiones, medida o altura de la plataforma ni tiene prueba pericial o de alguna naturaleza para demostrar que la altura de la plataforma o su localización creó una condición de peligrosidad. Respecto al "Public Playground Safety Handbook" mencionado por la apelante, argumentó que aplica exclusivamente a instalaciones recreativas para menores de edad ubicadas en áreas exteriores y no a la plataforma en controversia.

Asimismo, el 4 de septiembre de 2025, CTM presentó una *Réplica a la Moción consolidada en Oposición a las Solicitudes de Sentencia Sumaria.*[13] De manera similar, arguyó que la oposición de la apelante incumplió de manera crasa y patente con las exigencias de la Regla 36.3 de Procedimiento Civil, *supra.* Asimismo, adujo que la oposición de la apelante descansa en meras conjeturas, apreciaciones subjetivas y la invocación de un documento cuya aplicabilidad a los hechos de este caso no ha sido validada mediante peritaje alguno. Insistió en que la apelante no cuenta con prueba admisible suficiente para sostener que la plataforma constituía una condición peligrosa ni que esta fuera la causa próxima del accidente.

El 6 de octubre de 2025, la apelante presentó una *D[ú]plica a la R[é]plica presentada por CTM Group, Inc.*[14] Ese mismo día, la apelante presentó una *D[ú]plica a la R[é]plica presentada por Chubb Insurance Company.*[15]

El 21 de octubre de 2026, el TPI celebró una Vista sobre Discusión de Moción.[16] Tras escuchar los argumentos de las partes, el TPI resolvió Ha Lugar la petición de sentencia sumaria de Chubb y CTM. Concluyó que no hubo negligencia de parte alguna. Consecuentemente, el 10 de febrero de 2026 y notificada al día

---

[13] Íd., entrada núm. 100.
[14] Íd., entrada núm. 102.
[15] Íd., entrada núm. 103.
[16] Íd., entrada núm. 105, *Minuta* de la vista celebrada el 21 de octubre de 2025.

siguiente, el TPI emitió una *Sentencia* y desestimó con perjuicio la *Demanda*.[17] El foro primario declaró Ha Lugar tanto la *Moción de Sentencia Sumaria,* presentada por Chubb y la *Moción de Sentencia Sumaria bajo la Modalidad de Insuficiencia de Prueba,* presentada por CTM. En la Sentencia, formuló las siguientes determinaciones de hechos incontrovertidos:

1.  El 22 de noviembre de 2021 DDR Del Sol y CTM Group suscribieron un contrato temporero de arrendamiento ("Temporary License Agreement") con vigencia desde el 1 de enero de 2022 hasta el 31 de diciembre de 2022.

2.  En el referido contrato de arrendamiento las partes pactaron que CTM Group operaría ciertas máquinas de juegos para niños ("kiddie rids") en el centro comercial.

3.  CTM Group relevó a DDR Río Hondo frente a cualquier pleito, demanda o reclamo de daños presuntamente resultante de su negligencia.

4.  CTM Group se obligó a mantener en todo momento el área arrendada, y las máquinas de juego para niños, en condiciones seguras.

5.  CTM Group también se obligó a procurar la expedición de una póliza de seguros con cubierta de responsabilidad pública en la cual DDR Del Sol figuraría como asegurado adicional.

6.  El 13 de mayo de 2022 la demandante se encontraba caminando por uno de los pasillos del centro comercial Plaza del Sol cuando vio la plataforma que sirve como base de unas máquinas de diversión para niños.

7.  La demandante vio la plataforma desde cierta distancia.

8.  La demandante puso un pie encima de la plataforma.

9.  La demandante se agarró de uno de los tubos de los carritos o máquinas.

10. Al subir el otro pie, la demandante tropezó con la plataforma.

11. El piso donde ubica la plataforma en controversia es color claro.

12. La plataforma en controversia es color marrón.

---

[17] Íd., entrada núm. 108.

13. La plataforma en controversia hace contraste con el piso del centro comercial Plaza del Sol.

14. La plataforma en controversia es de madera.

15. El día del incidente, el centro comercial estaba iluminado.

16. La demandante desconocía la altura de la plataforma en controversia.

17. La demandante reconoció que su apreciación sobre la alegada condición peligrosa de la plataforma se basa únicamente en su experiencia personal al momento de la caída.

18. La demandante admitió que no posee conocimiento especializado en normas de seguridad, construcción, arquitectura o diseño de áreas comerciales.

19. La demandante identificó a su nieta como la única otra persona que ofrecería testimonio sobre la alegada negligencia de CTM.

20. La nieta de la demandante no es perito en normas de seguridad, construcción, arquitectura ni diseño de áreas comerciales.

El TPI acogió el argumento de la parte apelada sobre que no hubo negligencia en este caso. Determinó que, la condición de peligrosidad no se desarrolló de manera súbita, impidiéndole a la apelante conocer la peligrosidad antes de la ocurrencia del accidente y que la conducta que se le imputa a Chubb y CTM no puede resultar en responsabilidad civil. Asimismo, resolvió que, la prueba presentada le demostró que la apelante no contaba con prueba suficiente para establecer la negligencia.

Oportunamente, el 26 de febrero de 2026, la apelante presentó una *Moción de Reconsideración a Sentencia Sumaria.*[18]

El 27 de febrero de 2026 y notificada el 3 de marzo de 2026, el TPI denegó la solicitud de reconsideración.[19]

Inconforme, el 6 de abril de 2062, la señora García Alers presentó el recurso de apelación de epígrafe, en el que formuló los siguientes señalamientos de error:

---

[18] Íd., entrada núm. 109.
[19] Íd., entrada núm. 111.

**Erró el Tribunal de Primera Instancia al concluir sumariamente que un desnivel de una pulgada y media, carente de encintado o pintura de contraste, no constituía una condición peligrosa que activara el deber de CTM de advertir al público, ignorando que la placa metálica de la plataforma reflejaba el suelo y hacía imposible percibir su elevación.**

**Erró el Tribunal de Primera Instancia al adjudicar sumariamente controversias de hechos, concluyendo prematuramente que la caída fue producto del propio descuido de la apelante y no a consecuencia del desnivel oculto.**

**Erró el Tribunal de Primera Instancia al determinar sumariamente que las guías de seguridad de la Consumer Product Safety Commission (CPSC) no son aplicables a atracciones infantiles instaladas en centros comerciales, descartándolas como evidencia del estándar de cuidado razonable que CTM venía obligada a seguir.**

**Erró el Tribunal de Primera Instancia al eximir totalmente de responsabilidad a las partes demandadas mediante disposición sumaria, en lugar de permitir la evaluación y posible aplicación de la doctrina de negligencia comparada en un juicio en su fondo.**

En resumen, alegó que el foro primario confundió el reconocimiento visual de una estructura a distancia con la capacidad de percibir un desnivel en su base. Por lo que, adujo que erró el TPI al resolver que la plataforma no constituía una condición peligrosa. Arguyó que, la ausencia absoluta de advertencias y medidas de seguridad en el área, configuran de manera inequívoca la negligencia de CTM por omisión. Además, expresó que, su testimonio establece que, aun cuando la vio de lejos, la ilusión óptica le impidió apreciar la altura exacta de la plataforma.

De otra parte, manifestó que las mociones dispositivas fueron insuficientes dado que no demostraron la inexistencia de controversias de hechos y que la prueba presentada reafirma que la apelante no se percató de la altura del desnivel. Alegó que la

deficiencia probatoria de las mociones de Chubb y CTM demostraron la existencia de una controversia de hecho material, a saber, la incapacidad de la apelante de percibir la altura real del escalón debido a la ilusión óptica creada por el reflejo de la placa de acero inoxidable.

También, adujo que erró el TPI al rechazar la aplicabilidad del "Public Playground Safety Handbook" fundamentándose en que el centro comercial no es un parque. Por último, argumentó que, en la alternativa, aplicaría la doctrina de negligencia comparada. Arguyó que, la admisión de la apelante de haber visto la estructura a distancia no absuelve de culpa a Chubb y CTM, sino que, conllevaría una adjudicación proporcional de responsabilidad que requería la celebración de un juicio en su fondo.

Posteriormente, Chubb presentó un alegato en oposición. Adujo que, quedó establecido por el propio testimonio de la apelante, en la deposición tomada, que ésta vio la plataforma, subió un pie sin dificultad alguna, se sujeto de los carritos y, al subir el otro pie, tropezó con el borde. Por lo que, arguyó que, la prueba presentada por la apelante no fue suficiente para establecer que la plataforma podía catalogarse como una condición peligrosa y, a su vez, permita imponer responsabilidad a las partes apeladas. Además, alegó que la propia deposición de la señora García Alers derrota cualquier argumento en torno a si pudo o no apreciar la elevación real de la plataforma. Así las cosas, arguyó que, del propio testimonio de la apelante se desprende que no hubo engaño visual o estructura oculta alguna en el lugar.

De otra parte, manifestó que el centro comercial no es un área de uso público, sino una propiedad privada con acceso público. Por lo que, expresó que el TPI concluyó correctamente que las referidas guías son inaplicables a los hechos. Por último, adujo que, la inobservancia y descuido de la señora García Alers absorbe

cualquier grado de responsabilidad, si alguno, que pudo haber atribuirse a Chubb.

De otro lado, CTM presentó un alegato en oposición. En resumen, alegó que, los planteamientos de la apelante constituyen meras alegaciones no sustentadas en el récord y no susceptibles de ser consideradas por este Tribunal. Por su parte, sostuvo que del expediente no surge que existía una controversia real y sustancial de hechos materiales que impidiera la disposición sumaria del pleito. Asimismo, arguyó que, el TPI no erró al descartar el "Public Playground Safety Handbook" como estándar aplicable. Argumentó que, en ausencia de prueba pericial que establezca su autoridad y pertinencia, y ante la falta de prueba que lo vincule a un incumplimiento concreto, el documento no crea una controversia material de hechos ni suple la falta de prueba sobre el elemento de negligencia.

Por último, manifestó que la doctrina de negligencia comparada no sustituye ni suple la ausencia de prueba sobre el elemento de negligencia imputable a la parte apelada. Alegó que el TPI determinó, correctamente, que del propio testimonio de la apelante surge que la caída se debió a su propio descuido y que ésta, además, no presentó prueba suficiente para establecer el elemento de negligencia imputable a las apeladas, indispensable para sostener su causa de acción.

**III.**

**A.**

La Regla 36 de Procedimiento Civil, *supra*, regula todo lo concerniente a la moción de sentencia sumaria. Dicho mecanismo procesal se utiliza en aquellos litigios en los que no existen controversias genuinas de hechos materiales y, por consiguiente, no resulta necesaria la celebración de un juicio en su fondo, en la medida en que solo resta por dilucidar determinadas controversias

de derecho. ***Negrón Castro v. Soler Bernardini***, 2025 TSPR 96, 216 DPR ___ (2025); ***BPPR v. Zorrilla y otro***, 214 DPR 329, 338 (2024). Su propósito principal es la solución justa, rápida y económica de los litigios civiles. ***SLG Fernández-Bernal v. RAD-MAN et al***., 208 DPR 310, 334-335 (2021).

El promovente podrá solicitar al tribunal que se dicte sentencia sumaria a su favor, ya sea sobre la totalidad o cualquier parte de la reclamación solicitada. Reglas 36.1 y 36.2 de Procedimiento Civil, *supra*, R. 36.1 y R. 36.2. La moción de sentencia sumaria debe contener: una exposición breve de las alegaciones de las partes, los asuntos litigiosos en controversia, la causa de acción sobre la cual se solicita la sentencia sumaria, una relación concisa y organizada en párrafos enumerados de todos los hechos esenciales y pertinentes sobre los cuales no hay controversia, con indicación de los párrafos o páginas de la prueba documental donde se establecen los mismos, la argumentación del derecho aplicable y el remedio que se solicita. Regla 36.3 (a) de Procedimiento Civil, *supra*, R. 36.3(a).

El promovente de una sentencia sumaria deberá establecer, mediante declaraciones juradas o con prueba admisible en evidencia, que no existe controversia real respecto a hechos materiales de la controversia. Regla 36.1 de Procedimiento Civil, *supra*; ***Meléndez González et al. v. M. Cuebas***, 193 DPR 100, 110 (2015).

De igual forma, la parte que se opone a la sentencia sumaria tiene que cumplir con las exigencias de la Regla 36. En particular, debe enumerar aquellos hechos materiales de buena fe controvertidos y aquellos sobre los cuales no hay controversia. Regla 36.3 (b) de Procedimiento Civil, *supra*, R. 36.3(b). En ambos casos, por cada hecho, se tienen que indicar los párrafos o páginas de la prueba documental que establecen o impugnan ese hecho. Íd.

Para prevalecer en una moción de sentencia sumaria, su promovente tiene que establecer su derecho con claridad y debe demostrar que no existe controversia en cuanto a ningún hecho material, o sea, ningún elemento de la causa de acción. ***Meléndez González et al. v. M. Cuebas***, *supra*, pág. 110. Por hechos materiales se entienden aquellos que pueden afectar el resultado de una reclamación de acuerdo con el derecho sustantivo. ***Ramos Pérez v. Univisión***, 178 DPR 200, 213 (2010).

Nuestro máximo foro ha establecido que no es aconsejable dictar una sentencia sumaria cuando existe controversia sobre asuntos de credibilidad o que envuelvan aspectos subjetivos tales como la intención, los propósitos mentales o la negligencia o cuando el factor de credibilidad sea esencial para dilucidar la controversia del alegado discrimen. ***Segarra Rivera v. Int'l. Shipping et al.***, 208 DPR 964, 980 (2022); ***Aponte Valentín v. Pfizer Pharmaceuticals***, *LLC*, 208 DPR 263, 278 (2021).

De otra parte, es norma de derecho reiterada y establecida que los foros revisores nos encontramos en la misma posición que el foro primario al evaluar la procedencia de una sentencia sumaria. ***Batista v. Sucn. Batista et al.***, 2025 TSPR 93, 216 DPR __ (2025); ***Cruz Cruz v. Casa Bella Corp.***, supra, pág. 994. Sin embargo, los tribunales apelativos estamos limitados a: (1) considerar los documentos que se presentaron ante el foro de primera instancia; (2) determinar si existe o no alguna controversia genuina de hechos materiales y esenciales, y (3) comprobar si el derecho se aplicó de forma correcta. ***Birriel Colón v. Econo y otro***, 213 DPR 80, 91 (2023); ***Segarra Rivera v. Int'l. Shipping et al.***, supra, pág. 981; ***Meléndez González et al. v. M. Cuebas***, *supra*, págs. 114–116. La revisión de los foros apelativos conlleva examinar de *novo* el expediente del caso de la manera más favorable hacia la parte que

se opuso a la solicitud de sentencia sumaria en el foro primario. ***Birriel Colón v. Econo y otro***, supra, pág. 91.

**B.**

Nuestro Tribunal Supremo ha reconocido que existen, en esencia, dos modalidades de sentencia sumaria. ***Medina v. M.S & D. Química de P.R., Inc.***, 135 DPR 716, 731-732 (1994). La primera, la más tradicional, es aquella que se dicta cuando los documentos ofrecidos por la promovente demuestran ausencia de controversia real sobre los hechos esenciales del caso y únicamente corresponde aplicar el derecho. ***Jusino et als. v. Walgreens***, 155 DPR 560, 577 esc. 15 (2001); ***Medina v. M.S & D. Química de P.R., Inc.***, supra, pág. 732. La segunda se conoce como la sentencia sumaria por insuficiencia de la prueba y es aquella que se dicta cuando, después de un descubrimiento de prueba exhaustivo, se determina que la prueba existente no es suficiente o adecuada para sostener las alegaciones y los elementos esenciales de la reclamación y, por ello, únicamente corresponde desestimarla. Íd.; ***Medina v. M.S & D. Química de P.R., Inc.***, supra. A esta segunda le aplican las mismas normas y principios que tradicionalmente se han aplicado al considerarse mociones de sentencia sumaria. ***Medina v. M.S & D. Química de P.R., Inc.***, supra, pág. 734.

Bajo la modalidad de insuficiencia de prueba, la parte promovente puede presentar su moción de sentencia sumaria después de que las partes han realizado un adecuado y apropiado descubrimiento de prueba. Íd., pág. 732. Además, puede acompañar su moción de documentos o someterla sin documento alguno, cuando estos obran en el expediente del tribunal. Íd. También, puede incluir evidencia afirmativa que niegue algún elemento esencial de la reclamación. Íd.

Lógicamente, la parte promovente tiene el peso de demostrar que la parte promovida no cuenta con evidencia admisible suficiente

para aprobar al menos un elemento esencial. Íd. También, tiene el peso de demostrar que se ha llevado a cabo un descubrimiento de prueba completo, adecuado y apropiado, evidenciando que ha explorado la posibilidad de la existencia de evidencia admisible. Íd., pág. 733. Es decir, tiene que poner al tribunal en posición de evaluar si el descubrimiento de prueba realizado fue adecuado. Íd. Para hacerlo, no será suficiente una simple alegación de que no existe evidencia suficiente para probar el caso. Íd. Tampoco se considerará adecuado el descubrimiento de prueba cuando surja de un análisis de los documentos sometidos en apoyo de la solicitud, la oposición y el expediente que la parte promovente omitió auscultar alguna información que condujera a obtener prueba admisible. Íd.

Entretanto, en aras de derrotar una moción de sentencia sumaria bajo esta modalidad, la parte promovida puede: (1) presentar prueba admisible, que pueda tornarse admisible o que dé lugar a prueba admisible, para probar los elementos esenciales del caso; (2) evidenciar que existe prueba en el récord que derrotaría la contención de insuficiencia; (3) demostrar que la solicitud es prematura porque el descubrimiento no fue adecuado, fue incompleto o no se realizó; o (4) probar que no conviene resolver el caso mediante sentencia sumaria. Íd., pág. 734.

En resumidas cuentas, para que el tribunal pueda dictar sentencia sumaria por insuficiencia de la prueba, la parte promovente debe persuadirlo de que: (1) no es necesario celebrar una vista evidenciaria; (2) la parte promovida no cuenta con evidencia suficiente para probar algún hecho esencial; y (3) como cuestión de derecho, procede la desestimación. *Pérez v. El Vocero de P.R.*, 149 DPR 427, 447 (1999). Ahora bien, también es necesario que se le haya brindado al promovido una amplia oportunidad de realizar un descubrimiento de prueba adecuado. Íd.

**C.**

En otro extremo, el Art. 1536 del Código Civil de 2020, 31 LPRA sec. 10801, dispone que "la persona que por culpa o negligencia causa daño a otra, viene obligada a repararlo". En virtud de lo anterior, es norma reiterada de nuestra jurisdicción que, para demandar por daños y perjuicios, el demandante debe demostrar la existencia de: (1) un daño real; (2) una acción u omisión del demandado, la cual debe ser culposa o negligente; y (3) un nexo causal entre el daño real y la acción u omisión del demandado. ***Sucn. Mena Pamias et al. v. Meléndez et al.,*** 212 DPR 758, 768 (2023); ***López v. Porrata Doria,*** 169 DPR 135, 150 (2006); ***Bonilla v. Chardón,*** 118 DPR 599, 610 (1987).

Respecto al primer elemento, el daño ha sido definido como todo aquel menoscabo material o moral provocado por la contravención de una norma jurídica, sufrido por una persona y por el que deba responder otra. ***López v. Porrata Doria,*** supra, pág. 151. Respecto al segundo elemento, "la culpa o negligencia consiste en la falta del debido cuidado, que a la vez consiste en no anticipar y prever las consecuencias racionales de un acto, o de la omisión de un acto, que una persona prudente habría de prever en las mismas circunstancias". ***Sucn. Mena Pamias et al. v. Meléndez et al.,*** supra; ***López v. Porrata Doria,*** supra. Así, se actúa de manera culposa cuando, según las circunstancias del caso, no se obra como persona de diligencia normal u ordinaria. ***López v. Porrata Doria,*** supra, págs. 150-151. Entretanto, respecto al tercer elemento, "el nexo causal adecuado no es causa de toda condición sin la cual no se hubiera producido el resultado, sino la que ordinariamente lo produce, según la experiencia general". ***Sucn. Mena Pamias et al. v. Meléndez et al.,*** supra; ***López v. Porrata Doria,*** supra, págs. 151-152. En ese sentido, causa es "la condición que "ordinariamente produce el daño, según la experiencia general"

y "puede romperse ante la ocurrencia de un acto extraño". Íd., pág. 152.

**D.**

En el contexto de establecimientos comerciales, el Tribunal Supremo ha resuelto que cuando un comerciante mantiene abierto al público un lugar, con el propósito de llevar a cabo actividades económicas para su beneficio, éste asume el deber de mantener ese espacio en condiciones óptimas de seguridad que evite que un cliente sufra daño alguno. ***Colón y otros v. Kmart y otros***, 154 DPR 510, 518 (2001).

El dueño u operador de los establecimientos comerciales debe ejercer un cuidado razonable para mantener la seguridad del público y así evitar que sus clientes sufran daños. Íd. Los dueños de establecimientos comerciales son responsables por los daños ocasionados por condiciones peligrosas existentes, únicamente cuando dichas condiciones sean conocidas por los propietarios o su conocimiento le sea imputable. Íd.; ***Cotto v. C. M. Ins. Co.***, 116 DPR 644, 650 (1985). No obstante, dicha responsabilidad no es absoluta, sino que el demandante debe probar que el dueño no ejerció el debido cuidado para mantener la seguridad de los clientes. ***Ramos v. Wal-Mart***, 165 DPR 510, 513 (2005). ***Colón y otros v. K-mart y otros***, *supra,* pág. 518.

En síntesis, para que el demandante pueda prevalecer en su causa, debe establecer que: (1) su daño se debió a la existencia de una condición peligrosa; (2) que esa condición fue la que con mayor probabilidad ocasionó el daño; y (3) que ésta era conocida por el demandado o que debió conocerla. ***Colón y otros v. K-mart y otros***, *supra,* pág. 519. Los tribunales de primera instancia deben evaluar la prueba presentada y determinar, en casos de caídas si, por preponderancia de la prueba, la causa del daño sufrido está intrínsecamente vinculada con la condición peligrosa, sobre la cual

debe tener conocimiento el propietario del establecimiento comercial para imputarle negligencia. ***Admor. FSE v. Almacén Ramón Rosa***, 151 DPR 711, 725 (2000); ***Cotto v. C. M. Ins. Co.***, *supra*, págs. 650-651.

**IV.**

En el presente caso, el TPI dictó *Sentencia* sumariamente mediante la cual desestimó, con perjuicio, la Demanda incoada por la apelante. Resolvió que no hubo negligencia. Por el contrario, concluyó que la señora García Alers tenía pleno conocimiento de la plataforma y que, por su propio descuido, provocó su caída. Por lo que, determinó que no se desarrolló, de forma súbita, una condición de peligrosidad en el lugar.

Tras un análisis objetivo, sereno y cuidadoso del expediente apelativo y del TPI, así como de los argumentos esbozados por las partes, en correcta práctica adjudicativa apelativa, resolvemos que el TPI incidió al emitir la *Sentencia* apelada.

A tenor con la normativa jurídica pormenorizada, nuestra revisión de la sentencia sumaria es de *novo,* aunque limitada a la prueba documental presentada ante el TPI. A su vez, debemos examinar el expediente de la manera más favorable a la parte que se opone a la solicitud de sentencia sumaria. Véase, ***Meléndez González, et al. v. M. Cuebas***, *supra,* pág. 118.

Luego de una revisión exhaustiva del mismo, concluimos que existen hechos materiales en controversia que impiden la disposición del pleito de forma sumaria y ameritan la celebración de una vista sobre negligencia.

En el presente caso, la apelante alega que, mientras se encontraba en el centro comercial con su nieta y bisnieta, la última le pidió utilizar unas máquinas para niños y, cuando la señora García Alers se proponía a poner un pie en la plataforma, tropezó al

subir el otro pie, impactando con un borde de madera que sobresalía del piso, lo que provocó que se cayera.

A base de esos hechos, aduce que erró el TPI al determinar sumariamente que no existió negligencia por parte de CTM y al concluir que la plataforma no constituye una condición peligrosa. Señala que la plataforma, de color madera, tiene un diseño defectuoso dado que posee en su borde inferior una franja de metal en acero inoxidable, que refleja el color claro de las losetas del piso del centro comercial y provoca un efecto de confusión visual. Según alega, esto impide que se perciba la altura real del escalón o desnivel al momento de subir.

Por su parte, Chubb alega que la prueba estableció que la plataforma es aparente y perceptible a simple vista por su gran tamaño y porque es color marrón y hace contraste con el suelo.

Asimismo, CTM aduce que la apelante no presentó prueba pericial para establecer que la plataforma constituía una condición peligrosa. Alude que la propia apelante admitió en su deposición que vio la plataforma antes de subir, desvirtuando cualquier alegación de una condición oculta y que evidencia que la caída no fue consecuencia de una omisión imputable a las partes apeladas.

Conforme al derecho precedentemente pormenorizado, para que prospere una acción en daños y perjuicios, deberán concurrir los siguientes elementos: el daño, un acto culposo o negligente y un nexo causal entre el daño y la acción culposa o negligente. En nuestro ordenamiento jurídico, la culpa o negligencia se caracteriza por la ausencia del cuidado adecuado, que se traduce en la omisión de anticipar y prever las consecuencias razonables de un acto. ***Nieves Díaz v. González Massas***, *supra*, pág. 844.

En la *Sentencia*, el TPI resolvió que la apelante vio de antemano la plataforma, que esta es de color marrón y hace contraste con el piso del centro comercial y que, ese día, el área

estaba iluminada. Además, estableció que la apelante desconocía la altura de la plataforma y que su apreciación sobre la alegada condición peligrosa se basa en su experiencia personal puesto que no posee conocimiento en normas de seguridad, construcción o diseño de áreas comerciales. Estos hechos no están en controversia.

Empero, concluyó que la apelante no contaba con prueba para establecer que hubo negligencia por parte de las apeladas. Ahora bien, diferimos de la conclusión del foro primario en cuanto a que hay insuficiencia de prueba y que, por ende, no se demostró que hubo negligencia.

Sobre el particular, resulta palmario que existe controversia real en cuanto a hechos materiales referentes a si el accidente ocurrió por descuido de la apelante o por la existencia de una condición peligrosa. La apelante reconoce que la plataforma sobresalía del suelo del centro comercial más no se estableció mediante prueba preponderante si, en efecto, la apelante podía percibir su elevación para evitar el accidente.

Por ello, resolvemos que erró el TPI al no considerar que la prueba documental, presentada por las partes, pudiese demostrar que la apelante cuenta con evidencia sobre la existencia de una condición de peligrosidad y el conocimiento de las partes apeladas de dicha condición.

De manera que, no podemos descartar que la apelante pueda demostrar, en su día, que alguna de las partes apeladas incurrió en culpa o negligencia respecto a la plataforma debajo de las máquinas de juegos para niños que ubica en el centro comercial donde ocurrió el accidente.

Por lo anteriormente esbozado, corresponde revocar la *Sentencia* apelada. Por ello, tras determinar que existen hechos materiales en controversia, debemos cumplir con la exigencia establecida en la Regla 36.4 de Procedimiento Civil, *supra,* reiterada

en ***Meléndez González et al. v. M. Cuebas***, supra, y exponer los hechos que están en controversia.

De un pormenorizado análisis del expediente del caso, tanto ante el TPI como ante nos, surgen los siguientes hechos en controversia: 1) si la apelante tenía "pleno conocimiento de la estructura" y su elevación sobre el nivel del suelo, 2) si el reflejo del suelo en la placa metálica ocultó la elevación real de la estructura, 3) si el accidente ocurrió por un descuido atribuible únicamente a la apelante o, si hubo negligencia comparada, 4) si la plataforma en donde ocurrió el accidente constituía una condición peligrosa, 5) de constituir una condición peligrosa, si se debió advertir sobre peligros no aparentes, al público general, y 6) si el área donde ocurrió el incidente constituye un área sujeta a los estándares de seguridad reconocidos en la industria para espacios recreativos para la niñez.

Los documentos que se incluyeron junto a las mociones dispositivas y a los demás escritos relacionados a éstas, no demuestran claramente que estos hechos esenciales y materiales estén incontrovertidos.

En vista de lo anterior, concluimos que, el TPI incidió al dictar sentencia sumaria en el presente caso cuando existen controversia sobre elementos de negligencia. Recordemos que no es aconsejable dirimir cuestiones que envuelven elementos subjetivos mediante el mecanismo de sentencia sumaria. ***Ramos Pérez v. Univisión de P.R,*** supra, pág. 219.

Por los fundamentos pormenorizados, devolvemos este caso al TPI para que se puedan dilucidar, a través de una vista evidenciaria, los hechos materiales en controversia precedentemente formulados. Cabe aclarar que, en esta etapa de los procedimientos, no estamos prejuzgando la controversia final.

## V.

Por los fundamentos que anteceden, se revoca la *Sentencia* apelada y se devuelve el caso al TPI para la celebración de una vista de negligencia, a los efectos de resolver las controversias de hechos formuladas precedentemente.

Lo acordó el Tribunal y lo certifica la Secretaria del Tribunal de Apelaciones.


Lcda. Lilia M. Oquendo Solís
Secretaria del Tribunal de Apelaciones